(No. 38830.—

The People *ex rel.* Martin H. Myers, Appellee, *vs.* John W. Lewis, Jr., Speaker of the House, *et al.,* Appellants.

*Opinion filed May 20, 1965.*

William G. Clark, Attorney General, of Springfield, (Richard A. Michael, John J. O'Toole, and A. Zola Groves, Assistant Attorneys General, of counsel,) for appellants.

Giffin, Winning, Lindner & Newkirk, of Springfield, (James M. Winning, of counsel,) for appellee.

Mr. Justice Schaefer delivered the opinion of the court:

The issue in this case is whether or not House Bill 1575 was passed by both houses of the 73rd General Assembly in accordance with the constitution of Illinois. The petition for *mandamus* filed on the relation of Martin Myers alleges that it was so passed, and that the defendants, who are the presiding officers of the House of Representatives and the Senate of the 73rd General Assembly, and other officers and

employees of the 73rd General Assembly concerned with the enrolling and engrossing of bills, have failed to perform their duties and to present the bill to the Governor for his approval or veto. The circuit court of Sangamon County overruled the defendants' motion to dismiss the petition. The defendants elected to stand by their motion and the court directed that a writ of *mandamus* issue as prayed. The defendants have appealed directly to this court. The case presents a question arising under the constitution of Illinois.

House Bill 1575 amends certain sections of the Harness Racing Act. It was passed by the House on June 18, 1963, and by the Senate on June 28, 1963. Subsequently, on June 28, a motion prevailed to reconsider the vote by which the Senate had adopted the bill, and on June 29 it was tabled. The question for decision is whether the reconsideration and tabling of the bill are of any effect in view of the Governor's adjournment of the 73rd General Assembly, on June 28, 1963, under section 9 of article V of the constitution.

The petition alleges that the following events took place in the House of Representatives on June 28, 1963: The House adopted House Joint Resolution No. 71 which provided that "when the two Houses adjourn on Friday, June 28, 1963, they stand adjourned *sine die*," and requested the concurrence of the Senate therein. Thereafter the House adopted House Resolution No. 190 which directed the Clerk of the House to "inform the Senate that the House is ready to adjourn and inquire if the Senate has anything further to communicate to the House." Thereafter the House adopted House Joint Resolution No. 72 which provided "that when the two houses adjourn on Friday, June 28, 1963, which adjournment shall be no later than 9:30 o'clock p.m., Central Daylight Saving Time, they stand adjourned *sine die*," and requested the concurrence of the Senate therein. Thereafter the House adopted House Resolution No. 191, which recited the adoption of the two earlier joint resolutions concerning *sine die* adjournment, and continued:

"Whereas, On June 28, 1963, at the hour of 8:46 o'clock p.m., Central Daylight Saving Time, the Clerk of the House delivered said House Joint Resolution No. 72, accompanied by a message advising the Senate of the action of the House of Representatives and requesting the concurrence of the Senate therein to the Secretary of the Senate and requested a receipt therefor, but the Secretary of the Senate refused to accept the resolution and message or to issue a receipt therefor, whereupon the Clerk of the House of Representatives laid such resolution and receipt upon the desk of the Secretary of the Senate in the Senate chambers and returned to this House and reported this action; and

"Whereas, The hour of 9:30 o'clock p.m., Central Daylight Saving Time, has now passed, and a disagreement exists between the two Houses with respect to the time of adjournment; therefore, be it

"*Resolved, By the House of Representatives of the Seventy-third General Assembly of the State of Illinois,* that the two Houses of this General Assembly, by their aforesaid action, have demonstrated that they have disagreed and cannot agree with respect to the time of adjournment of the General Assembly; and, be it further

"*Resolved,* That the Speaker and the Clerk of the House of Representatives are hereby directed to so inform the Governor, and the Speaker and the Clerk of the House are hereby directed to certify to the Governor such disagreement of the two Houses with respect to the time of adjournment of the General Assembly."

At 10:45 p.m. on June 28, 1963, the Speaker of the House laid before the House the following proclamation by the Governor, dated June 28, 1963, which was read at large by the Clerk:

"STATE OF ILLINOIS
"Executive Department
"Proclamation

"Whereas, I have been officially informed by the certificate of the Speaker and the Clerk of the House of Representatives of the Seventy-third General Assembly of the State of Illinois that a disagreement exists between the two Houses of the General Assembly with respect to the time of adjournment; and

"Whereas, I find that such disagreement does exist;

"Now, Therefore, I, Otto Kerner, Governor of Illinois, by virtue of the authority in me vested by Section 9 of Article 5 of the Constitution of Illinois, do hereby declare the Seventy-third General Assembly of the State of Illinois adjourned to the 6th day of January, A.D. 1965, at twelve o'clock noon.

"IN WITNESS WHEREOF, I have hereunto set my hand and caused the Great Seal of the State of Illinois to be affixed.

> "Done at the Capitol, in the City of Springfield, this 28th day of June in the Year of Our Lord one thousand nine hundred and Sixty-three, and of the State of Illinois the one hundred and Forty-fifth.

(SEAL)

"By the Governor:                    OTTO KERNER, Governor.
"CHARLES F. CARPENTIER, Secretary of State."

The petition further alleges: At approximately 11 p.m. on June 28 the Governor's proclamation was delivered to the Lieutenant Governor, who was then presiding over the Senate; that the Lieutenant Governor "published and read at large said Proclamation to the members of said Senate" and at approximately 11:05 p.m. declared the Senate adjourned until January 6, 1965, and left the Senate chamber together with 26 members of the Senate. Thereafter Senator Arthur J. Bidwill occupied the rostrum, and a motion

to reconsider the vote by which House Bill 1575 had been adopted was passed by a group of Senators who remained in the Senate chamber. The petition alleges that this action, taken after the adjournment of the 73rd General Assembly, was not the action of the Senate and had no effect upon the passage of House Bill 1575. The petition then alleges that the defendants have failed to perform the duties imposed upon them to the end that House Bill 1575 might be presented to the Governor for his approval or veto, and it concludes with a prayer for the issuance of a writ of *mandamus* to compel them to perform those duties.

The defendants filed a motion to dismiss under section 48 of the Civil Practice Act, (Ill. Rev. Stat. 1963, chap. 110, par. 48) "by reason of the following affirmative matter which avoids the legal effect of or defeats the claim or demand of plaintiff: * * * 2. That the official Senate Journal of the 73rd General Assembly of the State of Illinois distinctly shows that the reconsideration of the vote by which House Bill No. 1575 was passed occurred on June 28, 1963, and that the motion to reconsider prevailed and that House Bill No. 1575 was then held on the order of third reading. That said Senate Journal for June 28, 1963, shows nothing in respect to the proclamation from the Governor declaring the 73rd General Assembly adjourned. That this proclamation from the Governor adjourning the 73rd General Assembly is first mentioned in the Senate Journal for June 29, 1963, wherein it is recited that said proclamation from the Governor was read in the Senate. * * *

"3. That the recitals in the Journal are controlling and cannot be contradicted in any way."

Attached to the defendant's motion to dismiss are excerpts from the Senate Journals of July 28 and July 29, which show the adoption of Senate Bill 1575 by the Senate, and the following subsequent entries:

"At the hour of 11:05 o'clock p.m., the President of the Senate left the rostrum.

Senator Bidwill, presiding.

Senator Hart submitted the following motion in writing:

'June 28, 1963

MOTION IN WRITING

Having voted on the prevailing side, I hereby move to reconsider the vote by which House Bill No. 1575 was passed.

Fred J. Hart'

And on that motion, on demand of two members, a call of the roll was had resulting as follows: Yeas, 34; nays, none.

\* \* \*

The motion prevailed.

By unanimous consent, on motion of Senator Hart, House Bill No. 1575 was held on the order of third reading.

\* \* \*

At the hour of 11:25 o'clock p.m., on motion of Senator Arrington, the Senate stood adjourned until Saturday, June 29, 1963, at 10:00 o'clock a.m. (C.D.S.T.).

SATURDAY, JUNE 29, 1963, 10:00 O'CLOCK A.M.

The Senate met pursuant to adjournment.

Honorable Arthur J. Bidwill, President Pro Tempore of the Senate presiding.

Prayer by Senator George E. Drach, Springfield, Illinois.

At the hour of 10:05 o'clock a.m., Senator Broyles moved that the Senate stand at recess until 11:00 o'clock a.m.

The motion prevailed.

11:00 O'CLOCK A.M.

At the hour of 11:00 o'clock a.m., the Senate resumed consideration of business.

Senator Bidwill presiding.

By unanimous consent, on motion of Senator Drach, the Senate proceeded to the following order of business.

PRESENTATION OF RESOLUTIONS

Senator Drach offered the following Senate Resolution and, having asked and obtained unanimous consent to suspend the rules for its immediate consideration, moved its adoption:

SENATE RESOLUTION NO. 80

WHEREAS, the Secretary of the Senate on June 28, 1963, received from the Clerk of the House of Representatives House Joint Resolution No. 69, [sic.] the terms of which Resolution called for the sine die adjournment of the General Assembly on June 28, 1963; and

WHEREAS, that Resolution was placed on the order of business but was not made known to and had not been considered by the Senate; and

WHEREAS, the Senate was not in any way in disagreement with the House of Representatives with reference to time of adjournment, not having known of or in any way considered the aforesaid Resolution; and

WHEREAS, the Speaker of the House of Representatives certified to the Governor an alleged disagreement, which in fact did not exist; and

WHEREAS, the Governor, without notifying or consulting with the Senate or any Republican member thereof, made an affirmative finding that said alleged disagreement existed, when in fact it did not exist;

*Now, therefore, be it Resolved,* that the Senate hereby express its regret with respect to the said erroneous certification by the Speaker of the House, which permitted an erroneous finding by the Governor that a disagreement existed between the two Houses as to adjournment, all of which resulted in the inability of the Legislature to complete its pending actions in completing the proper conduct of the State's business.

And on that motion, on demand of two members, a call of the roll was had resulting as follows: Yeas, 34; nays, none.

\*     \*     \*

The motion prevailed and the resolution was adopted.

Senator Hart moved that all bills remaining on the calendar be tabled.

And on that motion, on demand of two members, a call of the roll was had resulting as follows: Yeas, 34, nays, none.

\*     \*     \*

The motion prevailed.

And House Bill No. 1575 and Senate Bill No. 690 with House Amendment No. 1 were ordered to lie on the table.

\*     \*     \*

SENATE RESOLUTION NO. 81

WHEREAS, the Honorable Otto Kerner, Governor of Illinois, has by a purported proroguing of the Legislature directed the Legislature to remain out of session until January 6, 1965 and;

WHEREAS, the needs of the State may require that this Legislature convene in Special Session before that date;

*Now therefore be it Resolved,* that the Sine Die adjournment of this Senate adopted this 29th day of June, 1963, be recognized by the Governor and the presiding officer of the Senate as the proper and official adjournment date for the adjournment of the Illinois State Senate.

And on that motion, on demand of two members, a call of the roll was had resulting as follows: Yeas, 34; nays, none.

\*     \*     \*

The motion prevailed and the resolution was adopted.

MESSAGE FROM THE GOVERNOR

The following message from the Governor was read by the Secretary: \* \* \*

[Here is printed the Governor's proclamation as set out earlier in this opinion.]

At the hour of 11:40 o'clock a.m., Senator Drach moved that the Senate stand adjourned sine die.

The motion prevailed and the Senate stood adjourned sine die."

The Senate Journal for June 28, attached to the petition, also shows that two of the five members of the committee appointed to approve the Journal of that date declined to do so because it did not include all of the messages from the House of Representatives, because it failed to show that the Governor's proclamation was read at the approximate hour of 11:00 o'clock p.m., and because the Journal showed certain proceedings after the hour of 11:05 o'clock p.m.

Section 9 of article V of the constitution provides: "In case of a disagreement between the two houses with respect to the time of adjournment, the governor may, on the same being certified to him, by the house first moving the adjournment, adjourn the general assembly to such time as he thinks proper, not beyond the first day of the next regular session."

In this court the defendants adhere to the position that they took in the trial court. They do not deny that the petition accurately describes the events as they occurred. They contend, however, that the "bare allegation that the Proclamation of the Governor was read to the Senate on June 28, 1963, must fall to the contradictory facts recited in the Senate Journals." And they say that they "have established through the legally acceptable written records and proceedings of the Senate of the State of Illinois that the 'Proclamation of Adjournment' from the Governor was not read nor promulgated to that body until June 29, 1963; and subsequent to the reconsidering and ordering House Bill No. 1575 to lie on the table."

It is the petitioner's position that the failure of the Senate Journal to show that the proclamation was read to the Senate on June 28, or that the Senate was adjourned by the Governor prior to the motion to reconsider H.B.

1575, is not conclusive in this case, first, because there is no requirement that the Governor's proclamation be printed in the Journal, and second, because the Senate Journals themselves supply sufficient evidence that the proclamation was read on June 28. In support of the second of these grounds, he points out that Senate Resolutions Nos. 80 and 81 were both adopted prior to the reading of the Governor's proclamation, according to the Senate Journal of June 29, and that both of these resolutions clearly show on their face that the Senators who adopted them were aware of the Governor's proclamation and of the circumstances that gave rise to it. He also refers to the dissent of two of the members of the committee appointed to approve the Journal.

We find it unnecessary to discuss the second of the grounds advanced by the petitioner because we are of the opinion that the first ground he advances is correct. The defendants' contention rests entirely upon the fact that the Senate Journal does not affirmatively state that the Governor's adjournment proclamation was read to the Senate prior to June 29. This contention assumes, first, that the Governor's proclamation can not take effect until it has been read to both Houses of the General Assembly and second, that Journal entries are the exclusive means by which the Governor's action can be established. To support their contention they rely upon *Sangamon County Fair and Agricultural Ass'n* v. *Stanard*, 9 Ill.2d 267. The issue in that case was whether or not the bill in question had been read at large on third reading in the House of Representatives, and the court said: "Although the complaint alleges such failure to read at large, it also incorporates therein by reference an exhibit of the House Journal. Such exhibit affirmatively shows the amendatory bill to have been read at large. An exhibit attached to a complaint controls, and a motion to strike does not admit allegations in conflict with facts disclosed by the exhibit. (*Fowley* v. *Braden*, 4 Ill.2d 355.) The parliamentary history of an act or bill in the legisla-

tive journals is the only evidence that is recognized by the courts in this State, and the journals cannot be aided or contradicted by other documents or evidence of any kind." 9 Ill.2d at 275-6.

In this case, however, we are not concerned with the kind of problem that was before the court in the *Stanard* case. Even if we were to hold that entries in legislative journals could, under the constitution, control the action of the executive, we would see no reason why the inference that the defendant seeks to draw from the silence of the Senate Journal should control the affirmative recital of the fact in the House Journal. But there is no requirement, constitutional or otherwise, which establishes the Journals of the Houses of the General Assembly as exclusive evidence of executive action. The presence or absence of Journal entries in the Senate and the House can not affect the validity of the Governor's action under section 9 of article V of the constitution.

Except as the defendants rely upon the silence of the Senate Journal, they do not deny the facts alleged in the petition for *mandamus*. Upon those facts the judgment of the circuit court of Sangamon County directing the issuance of the writ of *mandamus* was correct and it is affirmed.

*Judgment affirmed.*